UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-cr-80001-Marra/McCabe

UNITED STATES OF AMERICA,

v.

FRANZ ANTHONY DEMEZIER and
KINGSLEY STEVE BOTEX,

    Defendants.
_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court upon two Motion to Suppress ("Motions") filed by Defendants Franz Anthony Demezier and Kingsley Steve Botex and referred to the undersigned by United States District Judge Kenneth A. Marra.  (DE 46, DE 47, DE 48, DE 50).  The Court held a hearing on the Motions on May 28, 2024.  (DE 58).  For the reasons set forth below, the Court **RECOMMENDS** that the Motions be **DENIED**.

**I.**    **BACKGROUND**

During the hearing on this matter, the parties agreed that both Motions can be decided on the papers based on the following facts already present in the record.

    **A.**    **The Tracking Warrant**

On December 19, 2023, a Palm Beach County Sheriff's Office ("PBCSO") deputy sought and obtained a tracking warrant signed by a Florida state court judge for a 2019 Silver Lexus UX 250H Florida tag #13DTXL (hereinafter "Target Vehicle").  (DE 49-1, DE 48-1).  The state judge found probable cause to believe the Target Vehicle was being used to commit vehicle burglary and theft offenses in violation of Fla. Stat. §§ 810.02(1) and (4) and 812.014(1) and 2(C).  (DE 49-1 at 6, DE 48-1 at 6).  As a result, the state judge signed a warrant authorizing PBCSO to install a

tracking device on the Target Vehicle and monitor it for 45 days. (DE 49-1, DE 48-1). The warrant authorized PBCSO to "enter onto any part of any private property or curtilage of that property, including detached garages or outbuildings, for the purpose of attaching/installing the tracking device on or in the vehicle described herein and in any surreptitious manner required to avoid detection." (DE 49-1 at 6, DE 48-1 at 6).

B.   The December 13 & 14 Vehicle Burglaries

In support of the warrant application, the PBCSO deputy submitted an affidavit attesting that the Target Vehicle had been used in two vehicle burglaries on, respectively, December 13 and 14, 2023. The affidavit provided as follows:

> On 12/13/2023, PBSO Deputies responded to [a residence] within unincorporated Boca Raton, FL in reference to a burglary of a vehicle. Deputies met with [hereinafter Victim 1]. Victim 1 advised that her vehicle was burglarized at approximately 0022 hours. Victim 1's ring camera sent her notification of the incident showing a black male wearing a black hoodie opened her vehicle and attempted to start the vehicle. Victim 1 stated that she possibly had left the vehicle unlocked. The footage showed the black male entered the vehicle and attempted to start it to no avail and then proceeded to search the Victim 1's vehicle. A prescription pad was the only thing reported stolen. The vehicle sustained no damages. The suspect vehicle was identified as a silver Lexus SUV bearing the FL tag 13DTXL which was confirmed through the guard gate security camera. The Suspect vehicle was seen leaving the guard gate located at Lyons Rd and Paradise Bay at 0024 hours. Video footage of the suspect vehicle was uploaded into evidence.
>
> Your affiant researched fixed license plate readers (herein referred to as LPR's) and was able to confirm the affixed license plate and vehicle which appears to be a third party rental. Based on his training and experience your affiant has knowledge of a common trend amongst car thieves and burglars to use third party rentals in an effort to hide their identity from law enforcement.
>
> Based on further LPR hits, your affiant found the vehicle was still actively driving, and had passed through another LPR traveling west bound on Northlake Blvd through Congress Ave within the city of Palm Beach Gardens. Shortly after the LPR captured the vehicle, an auto theft was reported just a short distance away from the LPR.
>
> …

2

> On December 14, 2023, at approximately 7:50 a.m. Officers responded to [Victim 2's residence in] Palm Beach Gardens, Florida in reference to a stolen vehicle. Responding Officers utilized body worn cameras.  Officers made contact with the registered owner who advised when they exited their residence at approximately 7:40 a.m. this morning, their blue Range Rover bearing Florida license plate KFIS83 was gone from their driveway.  Agents responded and made contact with security who provided access to security footage. On surveillance video at the exit gate, a silver Lexus SUV is seen leaving at approximately 7:35 a.m., directly behind the Lexus is the victims Range Rover.  Both vehicles turned north on Beeline Highway from the community. Based on Sunpass records provided by the victim, the Range Rover enters Southbound turnpike hitting the Sunpass toll at MM104 (45th St) at 7:37a.m.  Agents contacted Range Rover in attempt to track the vehicle however they advised because the subscription expired it could not be tracked. Based on the LPR hits it was found the Lexus is most commonly in the area of 45th St and Corporate Way within the city of West Palm Beach and is believed to be being stored and utilized within Palm Beach County.
>
> There is probable cause to believe that the suspects, as outlined above, are using the 2019 Silver Lexus UX 250H Florida tag #13DTXL; VIN: JTHU9JBHXK2004532, to commit or attempt to commit burglaries and auto theft. Based upon the fact that this Lexus UX 250H was actively utilized in the crimes enunciated above it is reasonable to believe that these suspects will continue to utilize the Lexus to commit said crimes.  A warrant authorizing a tracking device will enable law enforcement to track these suspect's activities and will enable law enforcement to identify these same suspects involved in the above crimes and located stolen property.

(DE 49-1, DE 48-1).

    C.    **The Arrests & Charges**

PBCSO installed the tracking device on the Target Vehicle on December 20, 2023.  (DE 46 at 7, DE 48 at 6, DE 57 at 3).  The next day, PBCSO relied on the tracking device to locate and surveil the Target Vehicle in Boca Raton.  (DE 1 at 2-3).  According to the criminal complaint, PBCSO observed Defendant Botex operating the Target Vehicle while Defendant Demezier accessed commercial mailboxes and removed U.S. mail.  (DE 1 at 3).  After conducting a motor vehicle stop, PBCSO seized U.S. mail and a postal arrow key from inside the passenger compartment of the Target Vehicle.  (DE 1 at 3).

3

Thereafter, on January 4, 2024, a grand jury returned an indictment charging both Defendants with possession of an unauthorized postal arrow key with the intent to unlawfully use it, in violation of 18 U.S.C. § 1704 and 2, and theft and possession of stolen mail matter, in violation of 18 U.S.C. § 1708 and 2.  (DE 23).  These Motions followed.

## II.     DISCUSSION

By way of the Motions, Defendants seek to suppress all physical and testimonial evidence obtained as a result of the tracking device attached to the Target Vehicle.  (DE 46, DE 48). Defendants argue that PBCSO obtained the tracking warrant in violation of the Fourth Amendment, which guarantees that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const., amend. IV.  "Probable cause exists if facts within the magistrate's knowledge and of which he had reasonably trustworthy information would warrant a man of reasonable caution in the belief that a crime was committed and that evidence is at the place to be searched."  *United States v. Strauss*, 678 F.2d 886, 892 (11th Cir. 1982).  Probable cause "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence."  *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019).

The exclusionary rule normally prohibits the admission of evidence obtained in violation of the Fourth Amendment.  *United States v. Taylor*, 935 F.3d 1279, 1288-89 (11th Cir. 2019).  In *United States v. Leon*, however, the Supreme Court created a good faith exception to the exclusionary rule, finding that it does not bar "admission of evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."  468 U.S. 897, 905 (1984).  The relevant inquiry under *Leon* is "whether a reasonably well trained officer would have

4

known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. The good faith exception applies in all but four limited sets of circumstances:

> (1) where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;
>
> (2) where the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc v. New York*, 442 U.S. 319 (1979);
>
> (3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
>
> (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002) (cleaned up).

Applying this standard, the Court finds it unnecessary to determine whether the PCSO affidavit established probable cause. The Court finds that, even if the affidavit failed to meet the necessary standard, none of the four exceptions to *Leon* applies here. In reaching this conclusion, the Court acknowledges the numerous deficiencies in the PBCSO probable cause affidavit, including the following:

- The affidavit claims the Target Vehicle "appear[ed] to be a third party rental." (DE 49-1 at 3, DE 48-1 at 3). Yet the affidavit contains no facts showing the rental status or continued use of the of vehicle 5 days later when PBCSO sought the warrant, let alone 45 days into the future when PBCSO sought to track the vehicle, giving rise to staleness concerns.

- As to the December 13 incident, the affidavit claims "[t]he suspect vehicle was identified as a silver Lexus SUV bearing the FL tag 13DTXL which was confirmed through the guard gate security camera." (DE 49-1 at 3, DE 48-1 at 3). Logically,

5

this means PBCSO somehow identified the license plate *and then* confirmed the identification by way of the guard gate camera. But the affidavit gives no indication how PBCSO made its initial identification of the license plate.

- As to the December 13 incident, the affidavit also claims that the homeowner's Ring camera recorded a burglary at 12:22 AM and that a guard gate camera recorded a silver Lexus SUV leaving the community two minutes later at 12:24 AM. (DE 49-1 at 3, DE 48-1 at 3). But the affidavit gives no indication that the Ring camera ever recorded the silver Lexus SUV, nor does it indicate the distance between the homeowner's Ring camera and the guard gate camera, giving rise to questions as to whether the silver Lexus SUV was involved in the burglary at all.

- As to the December 14 incident, the affidavit claims a stolen Range Rover left the gated community at approximately 7:30 AM, followed by a "silver Lexus SUV." (DE 49-1 at 3, DE 48-1 at 3). The affidavit then claims this was the same silver Lexus SUV used in the burglary the previous day. (DE 49-1 at 4, DE 48-1 at 4). But the affidavit does not explain how or why PBCSO made this connection.

To be sure, the affidavit is not a model of clarity. But at the end of the day -- and regardless of the many questions left open by the affidavit -- the following key facts remain: On December 13, 2023, somebody burglarized a car in the middle of the night in Boca Raton. Two minutes, later a guard gate camera recorded a silver Lexus SUV with tag 13DTXL leaving the Boca Raton community. The very next night, somebody stole a Range Rover in the middle of the night from a community in Palm Beach Gardens. The guard gate in Palm Beach Gardens recorded the stolen Range Rover leaving the community followed closely by a silver Lexus SUV matching the same general description as the one recorded the night before in Boca Raton.

Given the similar *modus operandi* of the two burglaries and the similarity of the vehicles present at or near the scenes of each burglary, the Court finds that none of the four exceptions to *Leon* apply here. See *Martin*, 297 F.3d at 1313 (explaining the four *Leon* exceptions). That is to say, the Court finds that the state court judge who signed the tracking warrant did not abandon her judicial role in the manner condemned in *Lo-Ji Sales, Inc v. New York*, 442 U.S. 319 (1979). Likewise, the Court finds the PBCSO affidavit, though far from perfect, was not so lacking in indicia of probable cause as to render belief in the existence of probable cause entirely unreasonable. Finally, the Court finds the warrant itself was not so facially deficient that a reasonable law enforcement officer could not have presumed it to be valid.1

As to this last point, the Court has considered, but finds unpersuasive, Defendants' argument that the tracking warrant lacked facial validity because it authorized PBCSO to enter *any* private property within its jurisdiction for the purpose of installing the tracking device. (DE 46 at 6-7, DE 48 at 6-7). The warrant included no limitation – commonly found in tracking warrants of this type -- to restrict entry solely to private property at a specific location or at least where law enforcement reasonably believe the target vehicle might be found. While the Court agrees the better course would have been to include a limitation of this type, the Court cannot agree the failure to do so rendered the warrant so "facially deficient" that no law enforcement officer could have reasonably relied upon it for purposes of *Leon*. Indeed, the Court notes that neither Defendant cited any case law invalidating a tracking warrant for failure to include this type of limitation.

---

1 A fourth *Leon* exception applies where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Martin*, 297 F.3d at 1313. During the hearing on this matter, Defendants conceded they were not pursuing relief under exception.

Finally, the Court has considered, but finds unpersuasive, Defendants' staleness arguments. In reviewing staleness challenges, "there is no talismanic rule that establishes arbitrary time limitations for presenting information to a magistrate, rather, each case is reviewed based on the unique facts presented." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994) (cleaned up). Courts should consider, among other factors, the maturity of the information, the nature of the suspected crime, the habits of the accused, the character of the items sought, and the nature and function of the premises to be searched. *Id.*

Here, the Court is troubled by PBCSO's simultaneous acknowledgment that the Target Vehicle "appear[ed] to be a third party rental," and its failure to include any additional facts showing the ongoing rental status or use of the vehicle as of the date PBSCO sought the warrant, let alone 45 days into the future when it sought to track the vehicle. Nevertheless, the relevant inquiry here is not whether this omission defeated probable cause but whether the omission left probable cause so lacking as to trigger one of the four exceptions to *Leon*. The Court finds it did not. Though far from perfect, the Court finds the probable cause affidavit and resulting tracking warrant in this case sufficient to hold up under *Leon*. *See Taylor*, 935 F.3d at 1292 (finding *Leon* applied even though warrant application was far from "perfect"). As such, the Motions should be denied.

### III. RECOMMENDATION & NOTICE OF RIGHT TO OBJECT

Accordingly, the undersigned **RECOMMENDS** that Defendants' Motions to Suppress (DE 46, DE 48) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Kenneth A. Marra. Failure to file objections timely shall bar the parties from a de

8

novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 31st day of May 2024.

RYON M. MCCABE<br>
U.S. MAGISTRATE JUDGE